UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES BOWES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | **PLAINTIFF DEMANDS** |
| | ) | **JURY TRIAL** |
| And | ) | |
| | ) | |
| GREGORY F.X. DALY, | ) | |
| in his official capacity only, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF CIVIL RIGHTS AND FOR DECLARATORY RELIEF UNDER HANCOCK AMENDMENT**

Plaintiff Charles Bowes who is a nonresident of the City of St. Louis states as follows:

**Introduction**

1.      Nonresidents of the City of St. Louis are subject to a 1% earnings tax on salaries, wages, commissions, other compensation and/or net profits "for work done or services performed or rendered *in the City*" (Emphasis added). The tax is primarily collected by city-based employers withholding 1% from 100% of their nonresident employees' pay during the year.  Before tax year 2020, Defendants, the City and the City's Collector of Revenue, paid refunds to nonresidents who worked outside the City based on the number of days they worked outside the City. Now, Defendants refuse to pay such refunds. In doing so, Defendants are brazenly and unlawfully keeping Plaintiff's money. This shocks

the conscience and violates Plaintiff's Fourteenth Amendment right to substantive due process. This further violates his Fourth Amendment right to be free of unreasonable seizures.

2.      Further, beginning in tax year 2020, in a change of policy without any change to the earnings tax ordinance itself, and with Plaintiff's money already in Defendants' hands, Defendants refuse to pay refunds to nonresidents except those who are traveling outside the City for business.  This is an arbitrary distinction without rational basis. This conduct violates Plaintiff's Fourteenth Amendment right to equal protection.

3.      Plaintiff seeks damages in the amount of the refunds he would have received but for Defendants' unconstitutional conduct, and injunctive relief to stop Defendants' unlawful conduct.

4.      Defendants' conduct enacts a new tax or expands the tax base, and therefore, is subject to a declaration that it violates the Hancock Amendment. Therefore, Plaintiff seeks a declaration that Defendants' conduct violates the Hancock Amendment.

**Party**

5.      Plaintiff Charles Bowes is an individual residing in O'Fallon, Illinois.

6.      The City of St. Louis ("the City") is a Constitutional Charter City of the State of Missouri.

7.      Gregory F.X. Daly is the elected Collector of Revenue for the City ("the Collector"), exercising the functions and responsibilities prescribed by, among other provisions of law, RSMo. § 82.599, the City of St. Louis Charter, Art. XV, § 20, and the Revised Code of the City of St. Louis (The City Code"), §§5.08.010, *et seq*.

8.      The Collector is responsible for collecting all earnings tax due to the City of St. Louis.

9.      The Collector, as an elected official, is a policy maker for the City.

10.     Plaintiff sues the Collector in his official capacity only, creating *Monell* liability for the City for the damages claims.[1]

## Jurisdiction and Venue

11.     Plaintiff asserts federal substantive due process claims and an equal protection claim under the Fourteenth Amendment and an unreasonable seizure claim under the Fourth Amendment.  Remedies for those claims are actionable through 42 U.S.C. § 1983 and § 1988.  This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331, 1343 and 2201.

12.     Injunctive relief is authorized by Fed.R.Civ.P. 65.

13.     Declaratory relief is authorized by Fed.R.Civ.P. 57 and 28 U.S.C. § 2201.

14.     The court may invoke supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

15.     Plaintiff brings his Hancock Amendment claims under the Missouri Constitution, Mo. Const. Art. X §§ 16-23. Plaintiff has standing to bring such claims under Mo. Const. Art. X § 23, which provides standing to taxpayers to bring actions to enforce the Hancock Amendment.

16.     Mo. Const. Art. X § 23 states that the taxpayer "shall have standing to bring suit in a circuit court of proper venue." It does not state that the taxpayer shall only have standing

---

[1] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

in Circuit Court, and Plaintiff suggests that this court may therefore hear the Hancock Amendment claim as a supplemental state law claim pursuant to the above-referenced 28 U.S.C. § 1367.

17.    Venue is proper in this court, the Eastern District of Missouri in the Eastern Division Court, because Defendants' relevant conduct occurred in the City of St. Louis, within this judicial district.

### Color of State Law

18.    At all relevant times Defendant City and Defendant Collector acted under color of state law.  Particularly, at all relevant times the City and the Collector acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, and its political subdivisions.

### Jury Demand

19.    Plaintiff demands jury trial on the damages claims.

### Facts

20.    The Earnings Tax Law, City Code § 5.22.020 ("the Ordinance"), states in relevant part:

A tax for general revenue purposes of one percent is imposed on:

B. Salaries, wages, commissions and other compensation earned after July 31, 1959, by nonresident individuals of the City for **work done or services performed or rendered in the City** . . .   (Emphasis added).

21.    This language is plain and unambiguous.

22.    If there is any ambiguity the Ordinance must be construed in favor of the taxpayer.[2]

---

[2] "An ordinance enacted as a taxing measure must be given a strict interpretation and construed against the taxing authority and in favor of the taxpayer." *Bachman v. City of St. Louis*, 868 S.W.2d 199, 202 (Mo. Ct. App. 1994) (citing *Adams v. City of St. Louis*, 563 S.W.2d 771, 775 (Mo. banc 1978).

23. The Ordinance thus creates tax liability for nonresidents only for work done when the taxpayer is physically present in the City, for otherwise, the taxpayer would not be doing the work or performing the service in the City.

24. The collection of earnings tax from persons who live in the City is not in dispute in this case.

25. Section 5.22.060(A) of the Code requires "[e]very employer within or doing business in the City who employs one or more persons" to withhold and pay to the Collector 1% of an employee's compensation on a quarterly basis, regardless of whether the employee is a resident or nonresident of the City. That section reads:

> Every employer within or doing business within the City who employs one or more persons on salary, wage, commission, or other compensation basis, shall deduct at the time when earned irrespective of when paid, the tax of 1% of salaries, wages, commissions, or other compensation due by the employer to the employee and subject to tax, and shall quarterly make his return and pay to the collector, on or before the last day of July, October, January and April of each year, the amount of taxes so deducted for the three calendar months next preceding the month in which the return is required to be filed. Said return shall be on a form or forms obtainable from the collector and shall be subject to the rules and regulations prescribed therefor by the collector. Every such employer shall furnish each employee with a statement of the amount of the tax withheld. The failure of any employer to deduct or withhold at the source the amount of tax due from the employees shall not relieve the employee from the duty of making a return and paying the tax.

26. At all relevant times, pursuant to that language, Plaintiff's employer, who does business within the City, has withheld the 1% earnings tax from Plaintiff's pay and then remitted the earnings tax to the Collector.

27. Claims for refunds are made on a proportionate basis, assuming 260 workdays per year.

28. The City refunds nonresidents the tax withheld for days worked outside the City.

29.     Persons have requested their refunds by using Form E-1R.

30.     Collector promulgated Form E-1R pursuant to his authority under City Code 5.22.100,

which states in relevant part:

> This form is to be used by non-residents requesting a refund based on days
> worked outside the City of St. Louis… Annual leave, sick leave, and/or
> separation pay of any person who is terminated or separated from a place
> of employment located within the City of St. Louis is taxable in the year
> received. No exceptions will be allowed on the basis of where it is earned
> or where the taxpayer resides… Employees who work remotely from home
> should be treated as working at their original principal place of work.
> These days may not be included in the Non-Residency Deduction formula
> on Form E-1R when claiming a refund.

31.     This rule making authority does not allow the making of rules which are arbitrary,

capricious, unreasonable, unlawful, or in excess of jurisdiction.[3]

32.     On inference, the procedure for obtaining refunds in place for years prior to tax year 2020

was pursuant to custom and practice as created by the Collector.

33.     At all relevant times, Form E-1R has contained a section requiring the taxpayer's

employer to sign a part of the form certifying the number of days the taxpayer worked

outside the City limits.

34.     Prior to tax year 2020, Form E-1R did not require the taxpayer or the employer to provide

a reason as to why the taxpayer worked the stated number of days outside the City. The

form, in relevant part, required only completing the following:

> This is to certify the below mentioned employee, a non-resident of the City of St.
> Louis, worked **outside the City of St. Louis** a total of _____ whole days
>
> Address of work location must be provided for days worked **outside the City of St.**

---

[3] *Gott v. Dir. of Revenue*, 615 S.W.3d 52, 55 (Mo. 2020).

*Louis*. Please provide address on the line below.

_____(emphasis added).

35.     In March 2020, due to the COVID-19 pandemic, and in accordance with local health

orders, many City employers either required or allowed their employees to work

remotely, which in many cases was in their residence outside the City.

36.     This created a looming revenue problem for the City because if it continued its practice of

issuing refunds to taxpayers who did not actually work in the City, it would lose earnings

tax revenue from those non-city residents no longer working in the City.

37.     In response, the Collector issued a statement regarding the future issuance of earnings tax

refunds, which read in relevant parts as follows:

***

**If you live outside of the city limits and your employer continues to
operate within the city limits, you will be required to pay the earnings
tax even if your employer permits you to work virtually.**

***

**As we have allowed in the past, <u>if your place of employment is in the
city and you are required to travel for business outside of the city to
meet customers, clients, etc., those days can be deducted from your
earnings tax calculation with the E1-R form with proper
documentation. However, if your place of employment remains in the
City while you are working virtually, you will be required to pay the
tax.</u>**[4]

(Emphasis added)

38.     Based on the Collector's statement, most employers continued to withhold earnings taxes

---

[4] *See Statement Regarding Employee Remote Work*, available at https://www.stlouis-
mo.gov/government/departments/collector/earnings-tax/documents/remote-work.cfm

for non-city resident employees who were and are working remotely due to the COVID-19 pandemic.

39.     In December 2020, the Collector promulgated a new E-1R refund request form for tax year 2020 ("2020 E-1R) and a required attachment called the Form E-1RV, which contains a new verification statement requiring employees and employers to attest to the following statement:

> I understand that a regular workday does not include holidays, vacation, working remotely from home or other work absences (attach a separate sheet if additional space is needed).

> Substantiating documentation such as travel and mileage logs, airline or train tickets, lodging receipts, etc., must be included when filing this form.

40.     The 2020 Form E-1R introduced a new provision that requires taxpayers to provide the following:

> Address of work location along with substantiating documentation (travel and mileage logs, airline or train tickets, hotel receipts, etc.) must be provided for days worked outside the City of St. Louis. Please complete Form E-1RV and submit with this return.

41.     The 2020 Form E-1RV also states that days worked outside of the City due to a temporary reassignment caused by COVID-19 may not be included in the non-residency deduction formula on Form E-1R when claiming a refund for tax year 2020.

42.     The 2022 Form E-1R changed the 2020 temporary reassignment language to the following:

> Employees who work remotely from home should be treated as working at their original principal place of work. These days may not be included in the Non-Residency Deduction formula on Form E-1R when claiming a refund.

43.     The Collector's public statement, along with the new 2020 and 2022 versions of Forms

E-1R and E-1RV, was and is designed to intimidate city-based employers from discontinuing the withholding of the earnings tax from nonresidents' pay who were and/or are working remotely from outside the City and/or from filling out the form in a manner consistent with the Ordinance.

44.   The Collector's statement and actions to reinterpret and apply the Ordinance, including the new Form E-1RV requirement, shocks the conscience.

45.   The Collector's statement and actions violate the Equal Protection Clause of the Fourteenth Amendment because they are discriminatory against nonresidents who worked remotely from home but were not travelling while working remotely.

46.   The Collector's statement and actions subject such nonresidents to discriminatory treatment by subjecting them to taxes not imposed on others of the same class, as that class is defined in the Ordinance.[5]

47.   The new requirements violate the Equal Protection Clause of the Fourteenth Amendment because they select out taxpayers who worked from home but were not travelling, an arbitrary distinction.

48.   The new form and process is discriminatory enforcement of a facially valid law and is therefore unconstitutional under the equal protection clause.[6]

49.   The new form and process subjected such taxpayer to discriminatory treatment by

---

[5] *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 345 (1989), *Hillsborough v. Cromwell*, 326 U.S. 620, 623 (1946).
[6] *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74 (1886); *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir.

subjecting him to taxes not imposed on others of the same class.

50.  There is no rational basis for treating nonresident teleworkers any differently than nonresident business travelers, yet the City is still issuing refunds based on days spent outside the City traveling, but not working remotely from home.

51.  The Collector's statement and actions assert, unilaterally and unlawfully, that the City may retain Plaintiff's 1% wages for days worked outside the City even though the earnings tax ordinance does not allow tax on such work.

52.  The Collector's statement and actions insinuate that refunds have historically been limited to days taxpayers spent traveling outside of the City for business. That limitation is found neither in the Ordinance nor in the pre-2020 Form E-1R, and this has not been the historical application.

53.  Before tax year 2020 the City did not impose tax on non-city residents for days spent *working* outside the City, regardless of reason, presumably because the law does not allow imposition of the tax for such workdays.

54.  The Collector's statement and actions appear to be designed to intimidate non-city residents from seeking refunds they are otherwise lawfully entitled to receive.

**Plaintiff Bowes**

59.  On or about March 25, 2023, Plaintiff Bowes submitted the Form E-1R and E-1RV for 2022 taxes to the Collector.

60.  On April 28, 2023, a representative from the Collector's office mailed Plaintiff Bowes as follows:

> We have received and reviewed the above referenced E-1R form. Based on the information provided you are not eligible to receive a refund. Please refer to the

"Statement Regarding Employee Remote Work" found on our website.

61.  Plaintiff Bowes responded to the representative on May, 15 2023 by email stating, "Per your letter to me, I respectfully submit the attached response attesting the Saint Louis City's Earnings Tax Division is violating my Constitutional rights. This letter also constitutes a second protest and demand for refund. I will follow-up with a lawsuit against the City within 90 days of your rejection letter to me." In response, the representative answered, "received".

62.  On May 23, 2023, in response to Plaintiff Bowes's submission for a refund of 2021 taxes, the Earnings Tax Division sent a letter along with the completed tax forms Mr. Bowes already submitted requesting the same information he originally provided.

**Continuing Refusal to Pay Refunds**

63.  As of this filing, the City continues to refuse to refund Plaintiff's earnings taxes withheld from their pay for periods when they performed or rendered services outside the City.

64.  The City continues to require submission of the 2022 E-1R and E-1RV, which unlawfully limit earnings tax refunds to only nonresidents who travel for work but not those who telework from locations outside the City.

**State Statutes Related to Earnings Tax and Refunds of Taxes**

65.  Pursuant to RSMo. § 92.111 and § 92.160 the City is not authorized by statute to assess earnings taxes for work unless the work is performed in the city or the services are rendered in the city.

66.  To the extent the Court views Plaintiff's claims as a "refund suit" and the City argues a protest is required prior to the filing of such a refund action under RSMo. § 139.031,

Plaintiff respectfully maintains that the statute does not and should not apply under the circumstances.

67.   RSMo. § 139.031 provides as follows:

> Any taxpayer may protest all or any part of any current taxes assessed against the taxpayer….
>
> Any such taxpayer desiring to pay any current taxes under protest or while paying taxes based upon a disputed assessment shall, at the time of paying such taxes, make full payment of the current tax bill before the delinquency date and file with the collector a written statement setting forth the grounds on which the protest is based.
>
> Every taxpayer protesting the payment of current taxes under subsection 1 of this section shall, within ninety days after filing his protest, commence an action against the collector by filing a petition for the recovery of the amount protested in the circuit court of the county in which the collector maintains his office.

68.   Here, Plaintiff has not yet been "assessed" any earnings tax or been previously notified by the City of any amount due and owing, rendering the protest provision of § 139.031 inapplicable. This is not a case where the City has demanded payment from Plaintiff and they have had an opportunity to challenge the proposed assessment by submitting a protest prior to or contemporaneously with making payment. *See e.g., Bachman v. City of St. Louis*, 868 S.W.2d 199, 200 (Mo. Ct. App. 1994) (involving a case where the Collector of Revenue notified plaintiffs that they would be required to pay City earnings taxes on the net profits they received from rents paid on their commercial property; plaintiffs objected to the payment of the tax but paid a portion of it under protest; and then Plaintiffs filed suit seeking damages and declaratory and injunctive relief).

69.   Here, Plaintiff's employer withheld estimated earnings tax payments in the form of payroll withholdings. The City has not made any assessment against the taxpayers. The

City is simply refusing to return the money to the taxpayers because Plaintiff's employer has work within the City. No determination can be made regarding what the taxpayer owes until he files his tax return (the Form E-1) or seeks a refund using the Form E-1R.

70.     While a protest is commonly required in tax challenges prior to filing a refund action,[7] in this case there was nothing to protest until April 15, 2023 because the City had not yet started refusing to pay refunds.

**Specific Hancock Allegations**

71.     The Missouri Constitution, Art X, § 22(a), in what is commonly known as the Hancock Amendment, states in relevant part:

> Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. If the definition of the base of an existing tax, license or fees, is broadened, the maximum authorized current levy of taxation on the new base in each county or other political subdivision shall be reduced to yield the same estimated gross revenue as on the prior base.

72.     By refusing to pay refunds and thereby requiring nonresidents of the City to pay earnings tax for work or services performed or rendered outside the City, Defendants have imposed a new tax, license or fee, and/or have increased the tax base.

73.     The requirement is a new tax because before the change in policy work performed or services rendered outside the city by non-city residents was not taxed.

74.     The tax base is being increased because whereas in the past the tax base did not include

---

[7] *Lett v. City of St. Louis*, 948 S.W.2d 614, 620 (1996), and other cases.

days worked by non-city residents outside the City, through its change in policy,

Defendants are taxing such days.

75.    The voters of the City have never voted to approve the imposition of tax on such days.

76.    Taxes were not proportionately reduced to compensate for taxation of such days.

77.    Defendants' taxing of days worked outside the city by non-city residents violates the

Hancock Amendment.

78.    The Hancock Amendment is a future oriented law, such that, in general, the taxpayer

bringing suit may only seek declaratory relief in regard to future taxes.[8]

### Policy, *Monell* Liability

79.    Collector is an elected official and thus a policy maker for the City of St. Louis.[9]

80.    His liability makes the City liable for any judgment for damages rendered in this case.[10]

### Substantive Due Process

81.    The Fourteenth Amendment states, in relevant part:

> "[N]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without the due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

82.    Property interests are not created by the Constitution. Rather, they are created, and their

dimensions are defined by existing rules or understandings that stem from an independent

source such as state law—rules or understandings that secure certain benefits and that

---

[8] The court may, under article X, section 23, declare a statute constitutional or unconstitutional. The limited nature of the declaratory, or interpretive, remedy does not authorize a court to enter a judgment for damages or injunctive relief. *Taylor v. State*, 247 S.W.3d 546, 548 (Mo. 2008).
[9] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 500 (1986).
[10] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

support claims of entitlement to those benefits.[11]

83.     Plaintiff has a constitutionally protected property interest in their wages.[12]

84.     The conduct of Defendants in refusing to pay earnings tax refunds:

    a.     Is an abuse of executive power,

    b.     Is an arbitrary action of government, and

    c.     Shocks the conscience.[13]

85.     Defendants had ample time to deliberate on their change in policy to tax days worked or services rendered by non-city residents outside the City.

86.     In the alternative, Defendants' conduct demonstrates deliberate indifference to the property rights of Plaintiff in his wages.

### Fourth Amendment Seizure

87.     Defendants' retention of earnings tax withholdings even after Plaintiff has filed a proper application for a refund is no different than police officers pocketing money from suspect during arrests.  In both cases the person (in this case the Defendants) have unlawfully kept for themselves property belonging to another.

88.     It is unreasonable for Defendants to have retained Plaintiff's earnings tax for those days for which Plaintiff has not worked in the City.

### No Eleventh Amendment Immunity

89.     The Eleventh Amendment does not "extend to suits prosecuted against a municipal

---

[11] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).
[12] *Snaidach v. Familly Fin. Corp. of Bay View*, 395 U.S. 337 342 (1969).
[13] *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)

corporation or other governmental entity which is not an arm of the State."[14]

90.    The second important limit to the principle of sovereign immunity is that it bars suits

against States but not lesser entities. The immunity does not extend to suits prosecuted

against a municipal corporation or other governmental entity which is not an arm of the

State." *Alden v. Maine*, 527 U.S. 706, 756 (1999).

### No Sovereign Immunity in Refund Context

91.    There is no sovereign immunity in the context of a federal due process claim related to

tax refunds:

> Plaintiff here alleges that his tax refunds has been withheld in violation of his
> Fourteenth Amendment due process rights. Thus, this exception to the doctrine of
> sovereign immunity applies. Sovereign immunity cannot serve as a defense in this
> case.  *Nelson v. Regan*, 560 F. Supp. 1101, 1104 (D. Conn. 1983).

### Refund as an Effective Remedy

92.    The law disfavors courts ordering refunds:

> A suit for the refund of taxes paid in error or collected illegally is looked upon with
> disfavor for public policy reasons. *Community Fed. Sav. & Loan Ass'n v. Director of
> Revenue,* 752 S.W.2d 794, 797 (Mo. banc 1988). In *Community Federal,* the court
> explains the reasoning behind this policy, stating:
>
>> Governments are entitled to presume that statutes are constitutional.
>> Governmental budgets are prepared on an annual cash basis.... Therefore, in the
>> absence of a statutory limitation on the time in which a taxpayer may file suit to
>> declare a tax unconstitutional, governments would be subject to substantial
>> liabilities from refunds of those unconstitutional taxes. Accordingly, in the
>> absence of statutory authority, taxes voluntarily, although erroneously paid, albeit
>> under an unconstitutional statute, cannot be refunded.

---

[14] "The second important limit to the principle of sovereign immunity is that it bars suits against
States but not lesser entities. The immunity does not extend to suits prosecuted against a
municipal corporation or other governmental entity which is not an arm of the State." *Alden v.
Maine,* 527 U.S. 706, 756 (1999).

93.     The City's retention of the tax is not just unconstitutional; it shocks the conscience.

94.     What Plaintiff seeks in damages, which equals the amount of refund they were entitled to receive, is nothing more than a return procedurally to the status quo and return of Plaintiff's property.

95.     The conduct of Defendants is not merely a matter of interpretation of tax laws, for which refunds are not available; the conduct of Defendants shocks the conscience, and therefore is appropriate for judicial action under the civil rights laws.

**COUNT I**
**SUBSTANTIVE DUE PROCESS DAMAGES**
**FOURTEENTH AMENDMENT REFUSAL TO PAY REFUNDS**

96.     Plaintiff incorporate all prior paragraphs.

97.     *First*, Defendants have retained Plaintiff's property by refusing Plaintiff's demands to pay refunds of earnings tax withheld from their pay for days in 2021 and 2022 in which Plaintiff did not perform work or render services in the City, even though under the earnings tax ordinance, Plaintiff does not owe earnings tax for such days.

98.     *Second*, Defendants' conduct in refusing to pay refunds is shocking to the contemporary conscience.[15] [16]

99.     *Third*, as a direct result, Plaintiff was damaged.

**Prayer**

WHEREFORE, Plaintiff requests that the Court enter a judgment that:

---

[15] For elements of verdict director, *see Flowers v. City of Minneapolis, Minn.,* 478 F.3d 869, 873 (8th Cir. 2007)
[16] 8th Cir. Model Jury Instructions 4.40.

100.  Awards damages to Plaintiff consisting of all earnings tax paid for work or services rendered or performed outside the City of St. Louis during 2021 and 2022 for which Plaintiff has applied for a refund but for which the City has not provided a refund.

101.  Makes such other orders as the court finds to be just and reasonable.

**COUNT II**
**SUBSTANTIVE DUE PROCESS DAMAGES**
**FOURTEENTH AMENDMENT**
**INSTRUCTING EMPLOYERS TO VIOLATE THE LAW**

102.  Plaintiff incorporates all prior paragraphs.

103.  *First*, on the Form E-1R and Form E-1RV for tax year 2021 and 2022, Defendants have instructed Employers not to count days worked remotely even though under the Ordinance, Plaintiff does not owe earnings tax for such days.

104.  *Second*, Defendants' conduct in instructing employers to refuse to give credit to Employees for days for which they owe no tax is shocking to the contemporary conscience.[17] [18] [19]

105.  *Third*, as a direct result, Plaintiff was damaged.

**Prayer**

WHEREFORE, Plaintiff requests that the Court enter a judgment that:

106.  Awards damages to Plaintiff consisting of all earnings tax paid for work or services

---

[17] Undersigned counsel make their claim for refunds, admittedly disfavored and generally not ordered, under the civil rights law under the umbrella of Rule 4-3.1, asserting that their argument is in good faith and seeks an extension, modification or reversal of existing law.
[18] For elements of verdict director, *see Flowers v. City of Minneapolis, Minn.,* 478 F.3d 869, 873 (8th Cir. 2007)
[19] 8th Cir. Model Jury Instructions 4.40.

rendered or performed outside the City of St. Louis during the period for which Plaintiff

has applied for a refund but for which the City has not provided a refund,

107.  Makes such other orders as the court finds to be just and reasonable.

## COUNT III
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
## STOP INSTRUCTING EMPLOYERS TO VIOLATE THE LAW

108.  Plaintiff incorporates all prior paragraphs.

### Prayer

WHEREFORE, Plaintiff requests that the Court issue preliminary and permanent

injunctive relief in favor of Plaintiff:

109.  Ordering the Collector to amend the current Form E-1R to match the substantive

language of the 2019 E-1R, including eliminating the requirement for submitting the Form

E-1RV and removing the language that reads as follows:

> Employees who work remotely from home should be treated as working at their
> original place of work. These days may not be included in the Non-Residency
> Deduction formal on Form E-1R when claiming a refund.

110.  Issuing such other orders as the court finds to be just and reasonable.

## COUNT IV
## UNREASONABLE SEIZURE
## FOURTH AMENDMENT

111.  Plaintiff incorporates all prior paragraphs.

112.  *First*, Defendants have taken possession of Plaintiff's earnings tax money pursuant to

payroll withholding, and have not returned Plaintiff's money even though the money

belongs to Plaintiff and Plaintiff have filed proper requests for refunds, and

113.  *Second*, Defendants' retention of the money is not reasonable because the City's

Ordinances do not make Plaintiff's work outside the city taxable, and

114. *Third*, as a direct result, Plaintiff's were damaged. [20] [21] [22]

### Prayer

WHEREFORE, Plaintiff requests that the Court enter a judgment that:

115. Awards damages to Plaintiff consisting of all earnings tax paid for work or services rendered or performed outside the City of St. Louis during the period for which Plaintiff has applied for a refund but for which the City has not provided a refund, and

116. Makes such other orders as the court finds to be just and reasonable.

### COUNT V
### EQUAL PROTECTION DAMAGES
### FOURTEENTH AMENDMENT

117. Plaintiff incorporates all prior paragraphs.

118. *First*, the earnings tax Ordinance makes no distinction between non-city residents working remotely from home and working remotely while traveling,

119. *Second*, Defendants have subjected Plaintiff to taxes for days working remotely but not while traveling,

120. *Third,* Defendants have thereby subjected Plaintiff to taxes not imposed on others of the same class, and

---

[20] Undersigned counsel make their claim for refunds, admittedly disfavored and generally not ordered, under the civil rights law under the umbrella of Rule 4-3.1, asserting that their argument is in good faith and seeks an extension, modification or reversal of existing law.
[21] For elements of verdict director, *see Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir.2017).
[22] 8th Cir. Model Jury Instructions 4.40.

121.   *Fourth*, as a direct result, Plaintiff was damaged. [23] [24] [25]

### Prayer

WHEREFORE, Plaintiff requests that the Court enter a judgment that:

122.   Awards damages to Plaintiff, consisting of all earnings tax paid for work or services rendered or performed outside the City of St. Louis during the class period for which Plaintiff has applied for a refund but for which the City has not provided a refund,

123.   Makes such other orders as the court finds to be just and reasonable.

### COUNT VI
### EQUAL PROTECTION FOURTEENTH AMENDMENT
### PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

124.   Plaintiff incorporates all prior paragraphs.

125.   *First*, the earnings tax Ordinance makes no distinction between non-city residents working remotely from home and working remotely while traveling,

126.   *Second*, Defendants have subjected Plaintiff to taxes for days working remotely but not while traveling, and

127.   *Third,* Defendants have thereby subjected Plaintiff to taxes not imposed on others of the same class, and

128.   *Fourth*, as a direct result, Plaintiff was damaged.

### Prayer

---

[23] Plaintiff makes his claim for refunds, admittedly disfavored and generally not ordered, under the civil rights law under the umbrella of Rule 4-3.1, asserting that his argument is in good faith and seeks an extension, modification or reversal of existing law.

[24] For elements of verdict director, *see Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 345 (1989) and *Hillsborough v. Cromwell*, 326 U.S. 620, 623 (1946).

[25] 8th Cir. Model Jury Instructions 4.40.

WHEREFORE, Plaintiff requests that the Court issue preliminary and permanent injunctive relief in favor of Plaintiff:

129. Ordering the Collector to amend Form E-1R to match the substantive language of the 2019 E-1R, including eliminating the requirement for submitting the Form E-1RV and removing the language that reads as follows:

> Employees who work remotely from home should be treated as working at their original place of work. These days may not be included in the Non-Residency Deduction formal on Form E-1R when claiming a refund.

130. Issuing such other orders as the court finds to be just and reasonable.

## COUNT VII
## HANCOCK AMENDMENT DECLARATORY RELIEF

131. Plaintiff incorporates all prior paragraphs.

132. Plaintiff proceeds on this count as individual taxpayer.

133. By requiring nonresidents of the City to pay earnings tax for work or services performed or rendered outside the City, the City has imposed a new tax or expanded the tax base without a vote of the people.

134. The City has exceeded its authority and violated Chapter 5.22 of the Code.

135. A controversy exists between the parties as to whether the City may impose the earnings tax on nonresidents for work or services performed or rendered outside the City.

136. This claim is appropriate for entry of a declaratory judgment under RSMo. 527.010 and Rule 87 of the Missouri Rules of Civil Procedure.

137. The facts averred demonstrate that a justiciable controversy exists between the parties, that Plaintiff has a legally protectable interest at stake, and the issues brought before the Court are appropriate for declaratory relief.

138.  Declaratory relief is necessary and proper to determine the rights and liabilities of the parties.

139.  The Collector has advised the public that nonresidents cannot receive and are not entitled to receive a refund for work and services rendered or performed outside the City. These statements have discouraged nonresidents from submitting requests for refunds.

**Prayer**

WHEREFORE, Plaintiff prays the court to issue declaratory relief as follows:

140.  Finding Defendants' refusal to issue refunds to non-city residents who worked remotely from locations outside of the City of St. Louis during 2021 and 2022 violates the Hancock Amendment.

141.  Finding Defendants' refusal to issue refunds to non-city residents who worked remotely from locations outside of the City of St. Louis during 2021 and 2022 violates the Ordinance (Section 5.22.010).

189.  Declare unlawful Defendant Collector's practice of including an instruction to Employers on the refund form (the 2022 Form E-1R) that remote work should not count as days worked outside the city and not subject to tax. and

190.  Makes such other orders as the court finds to be just and reasonable.

Respectfully Submitted,

Plaintiff

**CHARLES R. BOWES**
156 Summerlin Ridge, O'Fallon, Illinois 62269
Phone: (618) 791-7284
crbowes@yahoo.com